| | |
|---|---|
| CATRINA JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF MINNEAPOLIS, MINNESOTA, *a government entity and political subdivision of the State of Minnesota*,<br><br>and<br><br>ROBERT HEIPLE, *in his individual capacity acting under color of law as a Minneapolis Police Officer*,<br><br>Defendants. | Civil No. 15-2861 (JRT/SER)<br><br><br><br>**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Peter J. Nickitas, **PETER J. NIKITAS LAW OFFICE, L.L.C.**, 431 South Seventh Street, Suite 2446, Minneapolis, MN 55415, for plaintiff.

Brian Scott Carter and Lindsey E. Middlecamp, Assistant City Attorneys, **MINNEAPOLIS CITY ATTORNEY'S OFFICE**, 350 South Fifth Street, Suite 210, Minneapolis, MN 55415, for defendants.

Plaintiff Catrina Johnson ("Johnson") called 911 to request police response to a domestic dispute. Defendant Officer Robert Heiple ("Officer Heiple") and Officer Scott Buck ("Officer Buck") arrived at the scene. While executing a take-down maneuver on Johnson's son, Jareese Johnson ("Jareese"), Officer Heiple felt a pain in his leg while Johnson stood behind him. Officer Heiple assumed Johnson kicked him and arrested

Johnson. Officer Heiple later determined the leg injury was not caused by Johnson and charges against Johnson were dismissed.

Upon release, Johnson commenced this civil rights action against Officer Heiple and Defendant City of Minneapolis (collectively "Defendants") alleging eight federal and state law claims. Defendants filed a motion for partial summary judgment as to five claims, arguing Officer Heiple is entitled to qualified immunity[1] based on arguable probable cause at the time of Johnson's arrest. Because the Court finds the totality of circumstances do not conclusively show Officer Heiple had arguable probable cause to arrest Johnson, the Court will deny Defendants' motion for partial summary judgment.

## BACKGROUND

On July 1, 2013, Johnson called 911. (Decl. of Peter J. Nickitas ("Nikitas Decl."), Ex. A ("Johnson Dep.")[2] at 30:24-31:5, Dec. 6, 2016, Docket No. 27.) Johnson requested

---

[1] Defendants move for partial summary judgment solely on the ground of qualified immunity. (Defs.' Mem. in Supp. of Mot. for Partial Summ. J. at 9, 11, Nov. 15, 2016, Docket No. 21; Defs.' Reply Mem. in Supp. of Mot. for Partial Summ. J. at 2, 4-5, Dec. 20, 2016, Docket No. 28.) While police may be entitled to qualified immunity from federal claims, the Minnesota Supreme Court has explicitly held that federal qualified immunity does not "supplant[] the Minnesota doctrine of official immunity in state law claims." *Elwood v. Rice Cty.*, 423 N.W.2d 671, 677 (Minn. 1988); *see also Yowell v. Combs*, 89 F.3d 542, 544 (8th Cir. 1996). Even so, because qualified and official immunity require the same finding regarding arguable probable cause, the Court will construe Defendants' qualified immunity arguments with respect to Counts V-VIII as official immunity arguments under Minnesota law. *See State v. Merrill*, 274 N.W.2d 99, 108 (Minn. 1978) (quoting *State v. Harris*, 121 N.W.2d 237, 263-64 (Minn. 1963)) ("The constitutional requirement of 'probable cause' and the statutory requirement of 'reasonable cause' are synonymous.").

[2] Defendants also submitted excerpts of Johnson's deposition testimony. (*See* Aff. of Lindsey E. Middlecamp, Ex. 1, Nov. 15, 2016, Docket No. 22.) To the extent pages of Johnson's deposition were not submitted in the Nikitas Declaration, the pages are attached to the Middlecamp Affidavit.

assistance removing Jareese from her home. (*Id.* at 31:6-10.) Specifically, Johnson "did not feel safe" because Jareese was "cursing . . . and slamming doors" and Jareese had thrown Johnson's cane somewhere. (*Id.* at 31:22, 32:1-12.) When police arrived at Johnson's apartment, Johnson held a hammer because "Jareese had [her] in the corner." (*Id.* at 66:10-12, 66:22-24.) Johnson testified she picked up the hammer before her neighbor, Mark Moriarty ("Moriarty"), heard the dispute and entered Johnson's apartment. (*Id.* at 66:15-20; 160:23-161:1.)

Officer Heiple and Officer Buck arrived at Johnson's apartment in response to the 911 call. (*Id.*, Ex. C ("Heiple Dep.") at 18:16-23.) Johnson allowed the Officers into her apartment building. (*Id.* at 20:8-11; 21:13-14.) Johnson led the Officers down the hallway to her apartment where they encountered Jareese. (*Id.* at 20:16-20; 23:13-16.) The Officers questioned Johnson and Jareese separately. (Johnson Dep. at 63:20-64:23.) After Johnson informed Officer Buck that Jareese threatened Johnson and Johnson wanted Jareese removed from the home, Officer Buck went to the apartment building's hallway (directly in front of Johnson's apartment) and arrested Jareese. (*Id*. at 64:21-65:3, 65:15-17.) Jareese resisted and the Officers had to take Jareese down to the floor. (*Id.* at 65:1-66:6, 77:4-78:15.) At the time of the "take-down," Officer Buck faced the doorway to Johnson's apartment and Officer Heiple had his back to Johnson's apartment. (*Id.* at 83:1-14.) Johnson retreated further into her apartment to give the Officers room. (*Id.* at 77:18-79:18.)

After the "take down," Officer Heiple felt a sharp pain like an "explosion" in his right calf. (Heiple Dep. at 27:4-8.) Although not seeing Johnson, Officer Heiple

immediately assumed Johnson assaulted him.  (*Id.* at 29:14-17; Aff. of Robert Heiple ("Heiple Aff.") ¶ 4, Nov. 15, 2016, Docket No. 23.)  Officer Heiple allegedly based his assumption on "Johnson's level of emotional and verbal distress before and during the arrest," Officer Heiple's "familiarity with . . . domestic disturbance calls," and his "genuine[] belie[f] [that] . . . Johnson had stomped or kicked [Officer Heiple] in the leg."  (Heiple Aff. ¶ 4.)

After feeling pain in his right calf, Officer Heiple first confirmed with Officer Buck that Jareese was handcuffed and secured.  (Nikitas Decl., Ex. E ("Buck Dep.") at 31:21-33:21.)  Officer Buck responded affirmatively.  (*Id.*)  Once Officer Buck had Jareese under control (*id.*, Ex. B at 25; *id.*, Ex. G (hereinafter "Moriarty Dep.") at 11:22-12:6; Buck Dep. at 30:21-33:21),[3] Officer Heiple turned around and asked Johnson "[d]id you just kick me?"  (Johnson Dep. at 83:22-23.)  Johnson responded "no."  (*Id.* at 83:24.)  Again, Officer Heiple accused Johnson of kicking him.  (*Id.* at 83:25-84:15; Heiple Dep. at 32:2.)  Johnson again denied kicking Officer Heiple and Officer Heiple placed Johnson under arrest.  (Johnson Dep. at 84:2-3; *see also* Heiple Dep. at 32:8-9 ("After I had stood up and asked her [why did you kick me], yes, then I said '[y]ou're under arrest.'").)

There were several witnesses at the time Officer Heiple placed Johnson under arrest.  Officer Buck, who "could see [Johnson]" during the "take down" (Buck Dep. at 32:22), did not see Johnson kick Officer Heiple.  (*Id.* at 33:22-23; *see also* Aff. of Scott Buck ("Buck Aff.") ¶ 4, Nov. 15, 2016, Docket No. 24.)  But Officer Buck indicated

---

[3] Contrary to this testimony, Defendants' counsel asserted at the motion hearing that Jareese was neither handcuffed nor under control at the time Officer Heiple stood to confront Johnson.  The record does not support counsel's assertion.

Officer Heiple "acted consistent with a genuine belief that he had been kicked." (Buck Aff. ¶ 4.) Officer Buck confirmed that Johnson denied kicking Officer Heiple, (Buck Dep. at 34:4-7), described Johnson as wearing a "nightgown," (*id.* at 47:13-16), and indicated he did not recall Johnson wearing "hard shoes," (*id.* at 48:11-20).

Moriarty was also present during the arrest. Moriarty testified that, based on Johnson and Officer Heiple's location, "it couldn't add up" for Johnson to kick Officer Heiple. (Moriarty Dep. at 18:3.) Moriarty described that Johnson kicking Officer Heiple "would defy the laws of physics." (*Id.* at 17:21.) Moriarty indicated Johnson "would have had to give some powerful kind of soccer kick . . . around the officer to kick his other side." (*Id.* at 17:24-18:1.)

Moriarty further testified that he confronted Officer Heiple about arresting Johnson. Moriarty contends he asked Officer Heiple "'Are you sure she kicked you?'" and Officer Heiple responded "'Yeah, she kicked me.'" (*Id.* at 18:13-14.) Still not convinced, Moriarty again inquired to Officer Heiple, stating "'It doesn't seem to make sense that she could have. Are you absolutely sure?'" to which Officer Heiple said "'It hurts . . . . Yeah.'" (*Id.* at 18:14-16.) Moriarty also described Johnson's appearance during the altercation as disabled, wearing "a slip," and not wearing "hard shoes." (*Id.* at 10:21-11:2.) Moriarty explained Johnson's shoes were either "thongs" or "soft slipper[s]." (*Id.* at 11:5-6.)

Finally, Jareese was on the ground during the interaction and did not testify Johnson kicked Officer Heiple. (*See* Aff. of Lindsey E. Middlecamp ("Middlecamp

Aff."), Ex. 4 at 63-64, Nov. 15, 2016, Docket No. 22.)  But Jareese indicated Johnson was upset when the Officers took Jareese down.  (*Id.* at 62:5-63:12.)

The parties vehemently dispute the events that occurred after Officer Heiple told Johnson she was under arrest.  Johnson contends Officer Heiple engaged in a violent, derogatory-laden arrest that ended with Johnson on the floor fully exposed on her lower half.  Johnson asserts she suffered a number of physical injuries and damage to property because of the way Officer Heiple arrested her.  (Pl.'s Mem. in Opp'n. to Mot. for Partial Summ. J. ("Pl.'s Mem.") at 3-5, Dec. 6, 2016, Docket No. 26.)  Officer Heiple, on the other hand, insists that Johnson and Officer Heiple fell over a coffee table during the arrest.  (Heiple Dep. at 32:19-33:17.)  Officer Heiple maintains that he then held Johnson on the floor until additional police officers arrived.  (*Id.* at 35:13-16.)

Both Officer Heiple and Johnson ended up in the hospital after the altercation.  Officer Heiple told emergency room personnel that he was "kicked in back of calf by mom of subject."  (Middlecamp Aff., Ex. 5 at CITY787.)  Eventually, however, Officer Heiple learned a rupture or sprain of his gastrocnemius muscle caused the pain in his right calf.  (*Id.* at CITY762.)  Defendants now admit Johnson did not kick Officer Heiple.  (*See* Defs.' Mem. in Supp. of Mot. for Partial Summ. J. at 11, Nov. 15, 2016, Docket No. 21 ("[L]ater facts revealed that Officer Heiple was mistaken in his belief that Johnson had assaulted him . . . .").)  Johnson spent four hours at the emergency room complaining of back and arm pain.  (Buck Dep. at 43:6-19, 44:4-24.)  Johnson alleges she suffered numerous bruises along with psychological trauma.  (Pl.'s Mem. at 5.)

Johnson further contends she spent three days in custody and was never charged, issued a citation, or prosecuted for an offense. (*Id.* at 10.) The record contains a copy of an "Inmate Booking Sheet" that shows the Officers charged Johnson with "Assault 4th Degree" and "Obstructing Legal Process." (Middlecamp Aff., Ex. 7.) The "Inmate Booking Sheet" indicates the disposition of the offense was "48 hours expired" and recorded a July 3, 2013 disposition date. (*Id.*)

On June 29, 2015, Johnson filed the operative Complaint relating to the events on July 1, 2013. (Compl., June 29, 2015, Docket No. 1.) Johnson alleged eight counts: Excessive Force under the Fourth Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983 (Count I), Common Law Battery (Count II), Common Law Battery *Respondeat Superior* (Count III), Unreasonable Seizure under the Fourth Amendment, Fourteenth Amendment, and section 1983 (Count IV), Common Law False Arrest (Count V), Common Law False Arrest *Respondeat Superior* (Count VI), Common Law False Imprisonment (Count VII), and Common Law False Imprisonment *Respondeat Superior* (Count VIII). On November 15, 2016, Defendants filed a Motion for Partial Summary Judgment. Admitting factual disputes remain on Counts I through III, Defendants moved for summary judgment on Counts IV through VIII on the grounds of qualified immunity.

## DISCUSSION

### I. STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party can demonstrate entitlement to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247-49).

## II. QUALIFIED IMMUNITY

The parties dispute whether Officer Heiple is entitled to qualified immunity on Johnson's unreasonable seizure claim pursuant to section 1983. Qualified immunity shields a police officer from liability in a section 1983 action unless the police officer's "conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). Qualified immunity involves a two-step inquiry: "(1) whether the

facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.* at 496.

"The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). But "the nonmoving party is given the benefit of all relevant inferences at the summary judgment stage, and if a 'genuine dispute exists concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment on that ground.'" *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (quoting *Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000)).

Defendants only contend that Johnson failed to show a violation of a constitutional right. Defendants argue no genuine issues of material fact remain regarding whether Defendants violated Johnson's Fourth Amendment rights by arresting Johnson because Officer Heiple had arguable probable cause to believe Johnson assaulted him.

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011) (quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005)). A law enforcement officer has probable cause "when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Id.* at 523 (quoting *Fisher v. Wal-Mart*

*Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010)). If an officer arrests a suspect under the mistaken belief that there is probable cause, arguable probable cause exists "if the mistake is 'objectively reasonable.'" *Id.* (quoting *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008)). "[P]robable cause is determined 'at the moment the arrest was made,' [and] any later developed facts are irrelevant to the probable cause analysis for an arrest." *Amrine*, 522 F.3d at 832 (quoting *United States v. Rivera*, 370 F.3d 730, 733 (8th Cir. 2004)).

When deciding whether to arrest a subject, "[o]fficers may 'rely on the veracity of information supplied by the victim of a crime.'" *Borgman*, 646 F.3d at 523 (quoting *Fisher*, 619 F.3d at 817). An officer is also not required to conduct a "'mini-trial' before effectuating an arrest." *Gilmore v. City of Minneapolis*, 837 F.3d 827, 833 (8th Cir. 2016) (quoting *Borgman*, 646 F.3d at 523). But "[a]n officer contemplating an arrest is not free to disregard plainly exculpatory evidence" and cannot avoid "minimal further investigation" if it "would have exonerated the suspect." *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999). Indeed, "law enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as" such investigation would not unduly hamper law enforcement. *Id.*

Taking all reasonable inferences in Johnson's favor, fact issues exist as to whether Officer Heiple had arguable probable cause to arrest Johnson. First, the record shows the circumstances did not necessarily require Johnson's immediate arrest to prevent undue hampering of law enforcement efforts. Though the record indicates Johnson was in a

heightened emotional state[4] at the time of Jareese's arrest, Johnson, Moriarty, and Officer Buck testified that Jareese was handcuffed and under control before Officer Heiple confronted Johnson about the alleged assault. Because Officer Heiple was not alone at the scene and Jareese was handcuffed and under control, Officer Heiple had the ability to secure the scene without immediately arresting Johnson.

Further, while Officer Heiple may have had an honest belief Johnson assaulted Officer Heiple, any minimal amount of investigation may have exonerated Johnson. Officer Heiple performed no investigation beyond asking Johnson repeatedly whether Johnson kicked Officer Heiple. Officer Heiple did not ask any witnesses if they saw Johnson kick Officer Heiple, even after Moriarty confronted Officer Heiple about Johnson's physical abilities. According to the record, had Officer Heiple asked the witnesses if they saw Johnson kick Officer Heiple, all witnesses would have answered no. In addition, nothing in the record indicates that Johnson – a 5' 4" disabled woman weighing about 140 pounds and wearing a slip and soft shoes – had her cane during the incident, making Johnson's ability to kick Officer Heiple with sufficient force as to cause "explosive pain" improbable. Under these circumstances, fact issues exist as to the

---

[4] At the motion hearing, Defendants' counsel argued that Johnson's arrest was substantially similar to the arrest in *Ehlers v. City of Rapid City*, 846 F.3d 1002 (2017). However, *Ehlers* is highly distinguishable. In *Ehlers*, the Eighth Circuit found police had arguable probable cause to arrest Ehlers for obstruction when officers observed Ehlers fail to obey an unequivocal police instruction to step back from the scene where his son was under arrest. *Id.* at 1010. Indeed, Ehlers stepped closer to the officers despite the instruction. *Id.* Johnson's case is substantially different because neither Officer Heiple nor any witness saw Johnson commit the alleged assault on Officer Heiple or any other violation of law. While Ehlers's movement closer in proximity to the officers clearly constituted a violation of the law, Johnson's close proximity to Officer Heiple at the time Officer Heiple felt pain did not.

reasonableness of Johnson's arrest and the record does not conclusively show Officer Heiple had arguable probable cause to arrest Johnson.

Finally, the peculiar facts of this case present a strong occasion where a fact issue remains on whether Officer Heiple had arguable probable cause to arrest Johnson. Specifically, Officer Heiple was both the alleged victim and the sole investigator on the alleged assault of Officer Heiple. Officer Heiple neither personally observed the alleged assault nor corroborated his initial information with available witness accounts.

For these reasons, the Court will deny Defendants' motion for partial summary judgment on Count IV.

## IV. OFFICIAL IMMUNITY

The Court next considers whether Officer Heiple is entitled to official immunity for the state-law claims alleged in Counts V through VIII. (Compl. ¶¶ 110-23.) "Similar to federal decisions addressing qualified immunity in [section] 1983 claims, 'the legal reasonableness of the official's actions is relevant to whether the public employee committed a wilful or malicious wrong under the doctrine of official immunity.'" *Kelly v. City of St. Paul*, No. 09-461, 2010 WL 4272460, at *10 (D. Minn. Oct. 18, 2010) (quoting *Rico v. State*, 472 N.W.2d 100, 108 (Minn. 1991)).

Official immunity "protects from personal liability a public official charged by law with duties that call for the exercise of judgment or discretion unless the official is guilty of a wilful or malicious wrong." *Rico*, 472 N.W.2d at 106-07. The purpose of official immunity is to ensure that officers can "perform their duties effectively, without

fear of personal liability that might inhibit the exercise of their independent judgment." *Mumm v. Mornson*, 708 N.W.2d 475, 490 (Minn. 2006).

The exception to official immunity for willful and malicious conduct applies only when an officer knows or has reason to know he or she is doing something illegal. *Rico*, 472 N.W.2d at 107. Willful and malicious are considered synonymous in this context, *see id.*, and "[w]hether or not an officer acted maliciously or willfully is usually a question of fact to be resolved by a jury," *Morris*, 453 N.W.2d at 42.

The Court must first determine whether Officer Heiple's action was discretionary or ministerial. *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 664 n.5 (Minn. 1999). In Minnesota, "[t]he conduct of police officers in responding to a dispatch or making an arrest" is a discretionary function. *Id.* at 665. Thus, Officer Heiple used discretion in his capacity as police officer to assess the events of July 1, 2013 and arrest Johnson.

Because Officer Heiple's conduct on July 1, 2013 was discretionary, the Court next considers whether Officer Heiple's conduct was willful and malicious such that Officer Heiple had reason to know that Johnson's arrest was unlawful – without reasonable cause. Warrantless arrests without reasonable cause are prohibited by Minnesota law. Minn. Stat. § 629.34, subd. 1(c)(3). The Minnesota Supreme Court interprets the statutory requirement of "reasonable cause" as synonymous with "the constitutional requirement of 'probable cause.'" *State v. Merrill*, 274 N.W.2d 99, 108 (Minn. 1978) (quoting *State v. Harris*, 121 N.W.2d 237, 263-64 (Minn. 1963)). As a result, reasonable cause is generally analyzed under the federal probable cause standard.

*See, e.g.*, *State v. Walker*, 584 N.W.2d 763, 766 (Minn. 1998) (citing and applying the federal probable cause standard).

Officer Heiple cannot be protected by official immunity if the Court finds that Officer Heiple arrested Johnson despite having reason to know that the arrest lacked reasonable cause. *See, e.g., Elwood v. Rice Cty.*, 423 N.W.2d 671, 678-79 (Minn. 1988) (examining whether probable cause supported officers' actions and holding official immunity applied to plaintiff's state law claims); *Baker v. Chaplin*, 497 N.W.2d 314, 318 (Minn. Ct. App. 1993) (affirming the trial court's denial of an officer's motion for summary judgment based on official immunity because there was sufficient evidence that a factual dispute remained whether the officer's willful act was objectively reasonable under the circumstances); *Craighead v. Lee*, 399 F.3d 954, 963 (8th Cir. 2005) (holding that where the record "does not conclusively establish the reasonableness of the officer's actions," summary judgment on the basis of official immunity is improper).

For the reasons set forth in detail above, the record does not conclusively establish that Officer Heiple had reasonable cause to arrest Johnson. Taken in the light most favorable to Johnson, the evidence shows an arrest was not necessary to prevent hampering of law enforcement efforts; Officer Heiple had reasonable alternatives to control the scene; and Johnson may have been exonerated had Officer Heiple performed minimal investigation with the multiple witnesses.

Therefore, the Court will deny Defendants' motion for partial summary judgment on Counts V-VIII.

This case will be placed on the Court's next available trial calendar.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the City of Minneapolis's and Officer Robert Heiple's Motion for Partial Summary Judgment [Docket No. 19] is **DENIED**.

DATED: April 27, 2017  
at Minneapolis, Minnesota.

                                                 s/ John R. Tunheim  
                                                JOHN R. TUNHEIM  
                                                       Chief Judge  
                                          United States District Court